Barr v. Birkner.

---

ESTHER AMELIA BARR v. JOHN M. BIRKNER.

FILED MARCH 5, 1895.  No. 6254.

1. **Slander**: WORDS ACTIONABLE PER SE. Words spoken of a woman which falsely charge that she is a prostitute are actionable *per se,* and in an action of slander against the person who made such a charge it is not necessary to either allege or prove special damages in order to maintain the action.

2. ———: PLEADING.  Where it is alleged in a petition that defendant spoke certain words of the plaintiff and their meaning is averred in an innuendo, a statement in the answer by which the defendant admits the uttering of the words as alleged, but further states "that it was not in the sense of nor with the intent to convey the idea" claimed in the petition, is not a denial that the words had the signification averred in the petition.

3. ———: ERRONEOUS DIRECTION OF VERDICT.  The action of the trial judge in instructing the jury to return a verdict for the defendant examined, and *held* not warranted by the issues as shown by the pleadings in connection with such proof as was introduced, and erroneous.

ERROR from the district court of Clay county.  Tried below before HASTINGS, J.

*Thomas H. Matters,* for plaintiff in error:

The answer was a substantial confession of the averments of the petition and offered no matter of defense. (*Farrar v. Triplett,* 7 Neb., 240; *Dinsmore v. Stimbert,* 12 Neb., 434; *Douglass v. Matting,* 29 Ia., 498; *Kennedy v. McLaughlin,* 5 Gray [Mass.], 3; *Clark v. Munsell,* 6 Met. [Mass.], 373; *Haskins v. Lumsden,* 10 Wis., 302; *Moberly v. Preston,* 8 Mo., 463; *Hampton v. Wilson,* 4 Dev. [N. Car.], 468; *Knight v. Foster,* 39 N. H., 576; *Wolcott v. Hall,* 6 Mass., 514; *Alderman v. French,* 1 Pick. [Mass.], 1; *Wheeler v. Shields,* 2 Scam. [Ill.], 348; *Clark v. Brown,* 116 Mass., 504; *Moore v. Stevenson,* 27 Conn., 14; *Wilson v. Fitch,* 41 Cal., 364; *Daly v. Byrne,* 1 Abb. N. C. [N. Y.], 150; *Littlejohn v. Greeley,* 13 Abb. Pr. [N. Y.], 55; Townsend, Slander & Libel, 132, 352, 353, 357, 374, 600, notes and cases cited.)

The court should have directed a verdict for plaintiff. (Townsend, Slander & Libel, 234, 352, 353, 354, 600, and cases cited; *Gorham v. Ives,* 2 Wend. [N. Y.], 534; *Hotchkiss v. Oliphant,* 2 Hill [N. Y.], 510; *Dinsmore v. Stimbert,* 12 Neb., 434; *Douglass v. Matting,* 29 Ia., 498; *Daly v. Byrne,* 1 Abb. N. C. [N. Y.], 150; *Parkhurst v.*

*Ketchum,* 88 Mass., 406 ; *Inman v. Foster,* 8 Wend. [N. Y.], 602; *Kennedy v. Gifford,* 19 Wend. [N. Y.], 296.)

*L. P. Crouch* and *E. E. Hairgrove, contra.*

HARRISON, J.

The plaintiff commenced an action of slander against the defendant in the district court of Clay county, in which she filed the following petition:

"The plaintiff representing unto this honorable court sets forth that she is now, and has been for more than two years last past, a resident of Clay county, Nebraska, and that during her residence in Clay county she has been engaged in the business of keeping a hotel in the city of Sutton in said county.

"2. That the defendant is a physician and surgeon duly qualified under and by virtue of the laws of the state of Nebraska to practice medicine.

"3. That during the whole time of her residence in Clay county, Nebraska, up to the 15th day of April, 1892, this plaintiff employed said defendant as her family physician.

"4. That during all of said time said defendant waited upon the plaintiff in the capacity of a physician, and was or should have been under and by virtue of his position as physician of this plaintiff fully acquainted with all the ailments of whatsoever kind or nature with which the plaintiff was afflicted.

"5. The plaintiff desires more fully to show that notwithstanding the knowledge within the mind of the defendant regarding this plaintiff during the month of April, 1892, said defendant, wickedly intending to injure the plaintiff in her good name, in a certain discourse which he then had of and concerning the plaintiff in the presence and hearing of divers persons, falsely and maliciously did speak and publish the following false and defamatory words, that

is to say: 'There is a new landlord at the Occidental Hotel,' or words to that effect, meaning that the plaintiff had been delivered of a bastard child. And again in the hearing of divers persons the defendant falsely and maliciously did speak and publish the following false and defamatory words, that is to say: 'I knew that she was in that condition in January last,' meaning that he knew that the plaintiff was pregnant with a bastard child in January, 1892, and said defendant, in the presence and hearing of divers persons during said time, did falsely and maliciously, by innuendoes and insinuations, circulate the report of and concerning this plaintiff that she was pregnant with a bastard child, and later that she had been delivered of a bastard child, and at the time of making such insinuations and the making of said statements the said defendant knew them to be false and untrue in every particular, having been in constant employ of this plaintiff as her physician, and there was within his mind absolute knowledge of the falsity of said statements.

"6. The plaintiff further representing unto this court shows that said defendant, in the presence and hearing of divers persons in the month of April, 1892, in a certain discourse which he then had of and concerning the plaintiff in the presence and hearing of divers persons, did falsely and maliciously speak and publish the following false and defamatory words, that is to say: 'She is an old cat,' meaning that the plaintiff was a prostitute.

"7. The plaintiff further says that said defendant, during said months of April and May, gave circulation to the report that this plaintiff was a woman who is unchaste and impure, and that she is a common prostitute; that each and every one of said statements were made falsely and maliciously and wickedly for the purpose of injuring the plaintiff in her good name, by means of which said several premises the plaintiff has been greatly injured in her good name to her damage in the sum of $5,000."

To this the defendant filed an answer in which he admitted the statements made in the first and second paragraphs of the petition, and further states:

"2. And further answering the said petition of plaintiff, defendant alleges that he did not use the alleged supposed defamatory words, 'There is a new landlord at the Occidental Hotel,' but that he did use instead the following, to-wit: 'Have you heard the report of there being a new landlord at the Occidental Hotel;' that the said language so used by the defendant as aforesaid, and as above set out, was used by him with reference to and concerning the alleged supposed fact that plaintiff had given birth to a child, and was the same occurrence as that alluded to by the innuendo set out in plaintiff's petition, to the form of expression as in the said petition contained.

"3. The defendant herein alleges that the truth and facts in connection with and in regard to his use of the words above set out, his reason therefor, the circumstances under which they were spoken, the spirit in which they were uttered and spoken, and the grounds therefor, and all the matters and things connected therewith are as follows: The hotel referred to and mentioned in plaintiff's petition, and included in the supposed defamatory words aforesaid, was and is the Occidental Hotel in said city of Sutton, Clay county, and state of Nebraska; that the proprietors thereof, at the date of the offense charged against this defendant in plaintiff's said petition, and for a long time prior thereto and also at the present time, is a firm under the firm name and style of J. R. Shope & Co.; that the persons composing the said firm are J. R. Shope and this plaintiff; that each of said proprietors, from the time they first took possession of the said hotel until and including the present time, have represented and held themselves out to the public as single persons; that from the time the said proprietors first took possession of the said hotel they have run, used, and conducted it as a hotel for the accommoda-

tion of the traveling public, furnishing board and lodging for the same, and meals to all who might apply, and furnishing private boarding,—in a word, doing the business that the public would expect a hotel to do, and which is in the line of business of a hotel.

"4. That for a long prior to the date of the alleged offense against this defendant reports obtained circulation in the community from time to time adverse to the virtue and chastity of this plaintiff; that these reports formed topics for general remarks in the community in which the plaintiff resided and was doing business; that these reports were commented on, talked about, and canvassed by different classes of people in the community, both male and female; that these reports, by numbers in the community, came to be believed as true; that they cast a shadow of suspicion on the hotel, affected its business and the social standing of this plaintiff in the community in which she resided.

"5. That late in the fall of 1891, the date of which defendant cannot now recollect, plaintiff withdrew herself from the public and from the public sight, secluded herself from the public gaze and was hid from the public eye in the seclusion of her own private apartments within the said hotel; that this retirement of the said plaintiff into the privacy of her own apartments continued up to a short time following the date of the alleged offense plaintiff charges against defendant in her said petition, when she emerges from her long enforced retirement and again appears on the street and resumes her former habits; that during a part of plaintiff's said retirement she employed by turns the resident physicians to attend upon her in their professional capacity, but toward the close of her said retirement she dispensed with their further service and called in foreign medical aid and service; that her said retirement and seclusion as aforesaid gave rise to public rumor, surmise, and suspicions as to the reason and cause therefor; that the same

became a topic of frequent remark and criticism in the community by all classes of people, both male and female; that the said suspicion and surmises, preceded by the reports hereinbefore mentioned, took formal shape in such remarks as this: 'There must be something wrong at the Occidental Hotel,' the purport of which remark was that the said plaintiff must be pregnant; that the said remark on the part of all classes was frequent, and the truth of which obtained credence among a large number of persons, while a suspicion that it might be true was general among others.

"6. That some time in the early part of the month of April, 1892, the exact date defendant cannot now recall, defendant learned for the first time of a report in circulation to the effect that plaintiff had in the early morning of said day given birth to a child; that defendant found that by evening of the same day the said report had become the topic of general remark on the street; that defendant was repeatedly asked as he circulated among the people on the street if he had heard that 'There is a new landlord at the Occidental Hotel;' that defendant in turn asked the same question of other persons; that the said report was in everybody's mouth; that the various reports and rumors in circulation adverse to the chastity of this plaintiff, together with the seclusion of plaintiff from the public, all of which are more particularly set out above, were well known to defendant at the time of their existence, and in consequence and as a result thereof defendant believed that plaintiff had given birth to a child as alleged by the report in reference thereto.

"7. Further answering the petition of plaintiff the defendant alleges that in regard to the other supposed defamatory words alleged by plaintiff in her said petition to have been used by defendant, to-wit, 'I knew that she was in that condition in January last,' that he has no recollection of using the said language, but if he did, it was not in

the sense of his having absolute knowledge of the truth of the said words, for such knowledge he did not have; but if he did use them, it was in the sense that from the matters and things above set out as relating thereto he believed that they were true; that his said belief in the fact of plaintiff's said pregnancy was based on the said reports and the said seclusion of plaintiff from the public, as hereinbefore more fully made to appear.

"8. Further answering the petition of plaintiff in regard to other supposed defamatory words alleged by plaintiff to have been used by defendant of and concerning the said plaintiff, to-wit, 'She is an old cat,' says with reference thereto that he has no recollection of using the said words, but if he did use them it was not in the sense of, nor with the intent to, convey the idea that the said plaintiff was a prostitute.

"9. The defendant alleges that he has not at any time given circulation to the report that plaintiff was a woman who is unchaste or impure, or a common prostitute; that he has made no effort, sought no opportunity, availed himself of no occasion, nor in any other way has he sought, attempted, or tried to circulate any such report, nor has he done so; that all he has done in that regard is to talk about the said reports as every man and woman in the community has done in which plaintiff resides, as the subject might come up in conversation, and of his belief of their truth.

"10. The defendant alleges that in whatsoever he has said of and concerning the said reports about and concerning plaintiff he has done so without malice, and with no intent to injure either the business or the reputation of the said plaintiff."

There were some further allegations of the answer which were mainly repetitions of what had been before stated, and the answer closed with a denial that the plaintiff had been damaged in any manner or in any amount. The reply was as follows:

"1. Now comes the plaintiff, and replying to the answer of the defendant herein filed says: · That she denies each and every allegation therein contained except such as are hereinafter admitted.

"2. Plaintiff admits that the hotel referred to in her petition is the 'Occidental Hotel;'. that the proprietors do business under the firm name of J. R. Shope & Co.; that the partners composing said firm are J. R. Shope and this plaintiff; that they are single persons; that ever since they took possession of said hotel they have run it for the accommodation of the traveling public and local patrons; that the report circulated, canvassed, commented upon, and talked about, as set forth in the fourth count of the defendant's answer, are the reports and conversations of and concerning which this plaintiff complains to this court, and they were put in circulation and given circulation by the defendant, and she admits that they affected the business of the hotel and the social standing of the plaintiff.

"3. Plaintiff further says that in the fall of 1891, she being afflicted by the menopause of life, became weak and at times unable to perform her household duties, and called upon the defendant, as a physician, to treat her ailments, whatever they might be, and the defendant, after long and continuous trials to relieve this patient of her sufferings, plaintiff saw fit, to call upon Dr. Lee, now of Beatrice, Nebraska, but formerly of Sutton, Nebraska, who seemed to understand her case, and under his care and treatment her health became greatly improved, so much so that she was again able to resume her household duties, and, for this reason only was the defendant induced to make his vile and slanderous assertions set out in plaintiff's petition herein filed and consented to in defendant's answer.

"4. Plaintiff further says that the facts set out in defendant's answer constitute no defense to the cause of action of the plaintiff herein, wherefore said plaintiff prays that the prayer of her said petition be granted."

Our reason for copying the pleadings is that the disposition which must be made of the case in this court rests almost, if not entirely, on the conclusion to be reached from a determination of the conditions of the issues as fixed by the pleadings. When the case was called for trial a jury was impaneled and the plaintiff was called to the witness stand, and after a few preliminary questions had been asked and answered the answer of defendant was offered in evidence. As to this the following statements appear in the record.

"The plaintiff now offers in evidence the answer of the defendant John Martin Birkner. The same is received and marked 'Plaintiff's Exhibit 1.'

"Defendant objects to the introduction of the same, as incompetent, irrelevant, and immaterial. Overruled. Exception.

"Court: You may read any part you desire in the case, and read it when you please."

The examination of plaintiff was then continued, but without obtaining much, if any, testimony which in any manner or to any very appreciable extent or degree tended to support the allegations of the petition except to show that reports such as set forth in the answer were in circulation in the community regarding plaintiff and that they had probably, to some extent, affected the social standing of plaintiff unfavorably. The answer, if introduced in evidence, does not appear in the bill of exceptions as a part of the testimony thereby preserved and cannot be considered as a part of the evidence in the case or bearing upon the issues except as it must be considered in its statements as a pleading, as admitting or denying the allegations of the petition, and thus requiring as to some of them, or rendering unnecessary as to others, any proof by plaintiff of the truth of such allegations. There was no cross-examination of the plaintiff and no other witness was called or testimony offered by or in behalf of either party, and at the close of her testimony the defendant made a motion to the

effect that the court instruct the jury to find for the defend-
ant, which motion the court sustained and instructed the
jury as follows: "Gentlemen: It appears to the court that
plaintiff has produced no proof upon which you would be
justified in finding a verdict for the plaintiff. You will
therefore render a verdict in this cause for defendant."
This action of the court was duly excepted to by counsel
for plaintiff and was made one of the grounds of the motion
for a new trial filed on behalf of plaintiff and is assigned as
error in the petition in this court. There was a verdict in
accordance with the direction of the court and judgment
thereon for defendant.

The main question to be considered, and upon which
hinges the determination of the disposition to be made of
the case in this court, is whether the defendant, by some
admissions made in his answer, and failure to deny therein
some allegations of the petition, rendered it unnecessary for
the plaintiff to produce proof of such facts, or is his lia-
bility, at least to some extent, shown sufficiently by the
pleadings alone? The counsel for plaintiff contends that
this is true, and being true, it was error for the court to
instruct the jury as it did, to return a verdict for the de-
fendant. The answer contains a denial that the defendant
used the words, "There is a new landlord at the Occidental
Hotel," and further states that he did use other words in
speaking of the same matter, setting out such other words
in full. The words the defendant says he used were not a
direct statement, but were in an interrogative form and re-
ferred to the report of an occurrence and not to the subject
itself, and proof of a statement of what the defendant pleads
in his answer as being the words used would not have been
sufficient to sustain a charge of speaking those alleged in the
petition. "It is well settled that to authorize a recovery
in an action for slander, the words laid in the declaration,
or enough of them to charge the particular offense al-
leged to have been imputed, must be proved substantially as

charged. Evidence of the speaking of equivalent words, although having the same import and meaning, is not admissible. And words spoken interrogatively are not admissible to sustain an allegation of words spoken affirmatively." (*Sanford v. Gaddis*, 15 Ill., 228; *Wilborn v. Odell*, 29 Ill., 457; *Ransom v. McCurley*, 31 N. E. Rep. [Ill.], 119.) "In an action of slander the words charged and the words proved must be substantially the same; that they both convey the same idea is not sufficient to sustain the action." (*Bundy v. Hart*, 2 Am. Rep. [Mo.], 525; *Berry v. Dryden*, 7 Mo., 324; *Birch v. Benton*, 26 Mo., 163.) It follows that the statement of the words really used was not an admission of the ones claimed to have been spoken, and that proof of those pleaded was necessary under the denial of their use, contained in the answer.

In the sixth paragraph of the petition it was alleged that in the month of April, 1892, the defendant, in the presence and hearing of divers persons, did falsely and maliciously speak and publish of and concerning the plaintiff the following false and defamatory words, "that is to say: 'She is an old cat,' meaning that the plaintiff was a prostitute." The defendant's answer to this is "that he has no recollection of using the words, but if he did use them it was not in the sense of, nor with the intent to, convey the idea that plaintiff was a prostitute." He does not deny that he used the words stated or that they had the meaning alleged and conveyed such meaning to the persons hearing them, or to whom they were spoken. His answer to this allegation of the petition, aside from the admission it contains, is an allegation that he had an intent and used the words spoken with a meaning different from the one which the petition alleges they had and conveyed at the time and to the parties hearing them, and that he had a secret intent and meaning for the words. This is not a denial that they had the meaning to the by-standers when spoken, which the petition states they had, and to be available to the defendant as a de-

fense it would be necessary that it be shown that from the drift of the conversation, or what had been said and done at the time the words were spoken, or the facts and circumstances connected with the conversation or its subject-matter that they had such a bearing upon the import of the words as to limit the meaning conveyed to the hearers, to that entertained by the speaker of them. In the absence of such a showing, the fact that he had such intent and meaning at the time of uttering the words is immaterial. (Folkard's Starkie, Slander & Libel, secs. 591, 592; Moak's Underhill, Torts, pp. 139, 140; *Maybee v. Fisk*, 42 Barb. [N. Y.], 327; *Sabin v. Angell*, 46 Vt., 740.) It being admitted in the answer that the defendant had spoken of the plaintiff the words alleged, and not denied that their meaning was as claimed, this was in effect admitting that defendant had circulated the report that plaintiff was a prostitute, and no proof on this branch of the case was necessary on the part of plaintiff to entitle her to a verdict for at least nominal damages, for this was such a charge against her as was actionable in such a sense that when proved, or as in this case admitted to have been made, entitled her to damages, nominal damages at least being presumed without any further proof. (Cooley, Torts, 196; Townsend, Slander & Libel, 146, 147; *Boldt v. Budwig*, 19 Neb., 739; *Edwards v. Kansas City Times Co.*, 32 Fed. Rep., 813; *Hendrickson v. Sullivan*, 28 Neb., 329.) That other persons had said, or were saying the same, or that such a report was prevalent, or that what defendant had said was merely repeating what he had heard other persons say, would not excuse him from liability. (Cooley, Torts, 220 and cases cited; Folkard's Starkie, Slander & Libel, sec. 405.)

It follows that the action of the court in instructing the jury to return a verdict for defendant was wrong, and the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.